# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| WILLIAM JAMES MCGILMER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:15-cv-00419 |
| | ) | JUDGE CRENSHAW |
| DEZMOND J. HUGHES, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

William McGilmer brought this action against Officer Dezmond Hughes, pursuant to 42 U.S.C. § 1983, alleging that Hughes used excessive force when using a Taser on McGilmer.[1] (Doc. No. 1.) Before the Court is Hughes' Motion for Summary Judgment on the basis of qualified immunity. (Doc. No. 33.) For the following reasons, Hughes' motion is **GRANTED IN PART and DENIED IN PART**.

I.   UNDISPUTED FACTS

On July 11, 2014, Officer Leonard Cato and his officer-in-training Joel Callies responded to the Executive Inn in response to an aggravated assault call. (Doc. No. 40 at 1.) Dispatch described one suspect as a black male with a mohawk haircut wearing a black shirt and camouflage shorts that had pulled a gun on the complainant. (Id.) The other suspect was a white male wearing a white shirt and blue pants. (Id.) The suspects were reported to be staying in room 132. (Id.)

Cato interviewed the complainant, Derrick Stephenson, who told Cato how the suspects approached him aggressively outside his room. (Id.) Stephenson reported that the black male

---

[1] McGilmer also brought a malicious prosecution claim against Hughes, but McGilmer concedes that claim should be dismissed on summary judgment. (Doc. No. 38 at 1.)

suspect pointed a gun at him and threatened him while following Stephenson to his car. (Id.) Stephenson reported that two females were with the suspects, and the females were attempting to persuade the suspects to go back to the room to prevent an altercation. (Id. at 1-2.) This version of events was corroborated by Shontay Smart, a witness. (Id. at 2.) Cato then reviewed video of the events, which corroborated Stephenson's story. (Id.) The video showed that the suspects left the hotel and were not in room 132. (Id.) Cato briefed the officers present, including Hughes, on what had happened. (Id.) Callies prepared a police report, an officer notified a precinct detective, and the officers left the scene. (Id. at 3.)

Shortly thereafter, dispatch notified Cato and Callies that Stephenson called to notify them that the suspects had returned. (Id.) Several officers returned to the scene, including Cato, Callies, and Detective Polk. (Id.) Officers attempted several times to make contact with the suspects who appeared to be in room 132, and finally a black male partially opened the door and stated that there was no reason for the officers to be there and nobody was coming out or in. (Id.) Later, a white male partially opened the door and told the officers to get a warrant. (Id. at 3-4.) Officers identified four people inside the room—two male and two female. (Id. at 4.)

At some point, Sergeant Terrence Bradley came to the scene. (Id. at 4.) Cato informed him that (1) there were four suspects inside the hotel room; (2) the suspects were believed to be armed with a handgun; (3) there was a strong odor of marijuana coming from room 132; and (4) the suspects were not allowing police to enter the room, and the suspects would not leave the room. (Id.) Officers secured the area, cleared the rooms adjacent to room 132, and continued to attempt to persuade the suspects to come out of the room while detectives prepared a search warrant to gain entry to the room. (Id.) The occupants opened and then quickly shut the door a few times. (Id. at 6.)

Eventually, the black male, later identified as McGilmer, came out of the room with his hands up and stood facing police officers in front of the doorway to the room. (Id.; Doc. No. 42 at 7.) When he did, he stood directly in front of the door and an officer stood directly in front of him. (Id.; Doc. No. 41-1 at 3.) McGilmer was holding a bag of skittles in his left hand. (Doc. No. 42 at 7.) McGilmer told the officer that he was going to eat his candy. (Doc. No. 40 at 6; Doc. No. 41-1 at 3.) As McGilmer exited the room, the curtain in the window of the room also opened. (Doc. No. 40 at 7.) Cato could see people moving within the motel room, but the glare on the window prevented Cato from clearly seeing what they were doing. (Id.) Bradley advised the officers to remain covered because of the threat of McGilmer or one of the remaining occupants having a weapon. (Id. at 8.) McGilmer never threatened or resisted the officers, nor did he disobey their commands. (Doc. No. 41-1 at 3.)

Hughes moved into position with his police-issued Taser. (Doc. No. 40 at 9.) Cato and Bradley claim that there was a Taser warning followed by Hughes' deployment of the Taser, but McGilmer denies hearing a Taser warning. (Id. at 9-10.) The Taser hit McGilmer in the rear and administered a five second burst, bringing McGilmer to the ground. (Id. at 10.)

II.     STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court is required to view "the facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014)). In the qualified immunity setting, "the plaintiff bears the burden of

demonstrating that the defendant is not entitled to qualified immunity." Livermore ex rel. Rohm v. Lubelan, 476 F.3d 397, 403 (6th Cir. 2007).

III. ANALYSIS

Hughes argues that he is entitled to qualified immunity because his actions were objectively reasonable under the Fourth Amendment. (Doc. No. 35 at 13-15.) McGilmer argues that there are disputed issues of fact as to whether he posed a threat or actively resisted and whether he was warned before the Taser was discharged, and thus summary judgment is not proper.

Qualified immunity is an affirmative defense available to public officials in cases brought under 42 U.S.C. § 1983. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). To determine whether qualified immunity is appropriate, the court conducts a two-part test: (1) decide whether the facts in the light most favorable to the plaintiff make out a violation of a constitutional right; and (2) determine whether the right was "clearly established" at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court may decide either prong first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, both parties agree that McGilmer had a Fourth Amendment right to be free from excessive force. (Doc. No. 35 at 12; 39 at 3.) Both parties also agree that under Graham v. Connor, 490 U.S. 386, 395-96 (1989), the question is whether the officer's actions were objectively reasonable. (Id.) The reasonableness of force is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

Taking the facts in a light most favorable to McGilmer, Hughes is not entitled to qualified immunity. The question of whether the use of a Taser is objectively reasonable generally depends on whether the plaintiff is actively resisting the officer or not. See Cockrell v. City of Cincinnati, 468 Fed. Appx. 491, 495-96 (6th Cir. 2012) (compiling cases). According to McGilmer, he came

out of the hotel room with his hands up holding a bag of skittles. As he was talking with another officer who was a few feet in front of him, Hughes discharged his Taser on him from behind without warning. McGilmer claims he did not fail to comply with any command. Under these facts, with a factual dispute as to whether McGilmer failed to comply with commands and whether the officers warned McGilmer about the Taser, the Court cannot say that McGilmer was actively resisting Hughes. See Bohannon v. Town of Monterey, No. 16-5537, 2017 WL 347442 (6th Cir. Jan. 24, 2017) (unpublished) (holding that factual disputes surrounding the use of the Taser required the denial of summary judgment on qualified immunity grounds). As such, the Court denies qualified immunity on the excessive force claim.

IV. CONCLUSION

For the foregoing reasons, Hughes' Motion for Summary Judgment (Doc. No. 33) is **GRANTED IN PART** in regards to the malicious prosecution claim, and **DENIED IN PART** in regards to the excessive force claim. Hughes' malicious prosecution claim is **DISMISSED WITH PREJUDICE**.

This case will proceed to a jury trial on **March 28, 2017.**

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

5